Supervisors of Louisiana State Museum When you're ready, Mr. Giron. Good morning, your honors. Excuse me. Albert Giron, on behalf of the Board of Supervisors of the Louisiana State Museum and Robert Wheat in his official capacity as the interim director of the Louisiana State Museum. Your honors, our first issue that we presented to your honors has to do with the fact that the district judge awarded damages in this Title II ADA case against a public entity, but did so without there being any finding of intentional discrimination. Couldn't we talk about mootness first, since that's jurisdictional? Mootness? The mootness issue? I mean, I'm curious about mootness. What's your position on mootness? There was no justiciable controversy as at the time of trial. Why not? Because the court had recognized that the reasonable accommodation would be the ramps, etc. The ramps, etc., as presented to the court at trial, were already in order. They've been in place and utilized since October 2017, your honor. So basically, if your honors were to—what the appellee is basically asking you is to order that something be done that has been already in place and active since October of 2017. As at the time of trial, the judge was satisfied that the ramp system with the buzzers and the signs— But no one has said that the damages are moot, because the damages are his original effort to try to get in the door. The only mootness— Right. The mootness is injunction. And I know you're addressing his question. That's fine. But that has to do with forward-looking injunction declaratory relief. The damages are backward-looking. He was denied access the day he showed up because they didn't have the ramps and buzzers and all of that. Well, that's fine. If you want to—if you should go to that, and then I'll circle back to that. Yeah. As far as—I wasn't addressing— No, that's okay. —the damages with regard to mootness, Judge. Well, but on the mootness question, I think the issue that's a little dicey there, I think it's pretty clearly moot now. But the question is, was it moot at the time of trial? Because you all said, well, sure, we've ordered them, but they ain't there yet. And you all have been litigating for years during which you could have ordered these ramps, and you didn't. So was it really moot at the time of trial, and do we really care if it's moot now? It being the declaratory judgment and injunction and forward-looking stuff. With all due respect, what would Your Honors be ordering if, in fact, you found that it was not moot at the time? You're going to grant the request that it be ordered that these ramps be put in place. And, in effect, the ramps have already been in place from the start. Is there evidence in the—so I assume that the parties agree, correct me if I'm wrong, that the ADA violation here is the lack of ramps and buzzer and signage. That that was a reasonable accommodation that addressed the— Those three elements, ramps, sign, ramps, sign, buzzer. Both of the side's experts agree that that was a reasonable accommodation. Okay. Is there evidence in the record that ramps, signs, and buzzer are now in place? Subsequent to trial, yes, Your Honor, there is. So that's in the record before me? Yes, it is, Your Honor. Can you give me a record citation? Bear with me one moment. I will. While you're looking for it, the citations I have here are to photographs. At page 1633, I'm looking at them, 1634, 1635, 1636. And what I see there are photographs of doorways with signs and a buzzer. But I don't see any ramps. So I guess my question is, if you're — and I understand maybe both sides agree on this, but if you're asserting that the case, the injunctive and declaratory relief, is moot on appeal because the accommodation has been provided for, it seems to me that I would need to see record evidence, or we would need to see record evidence for that. We can't take evidence on that. Unless there's an agreement. If there's an agreement, that's something else. Is there an agreement? There's no end to it. In fact, I think even in that motion — Okay, well, that's fine. If there's an agreement, fine. I'm just — I looked at the record evidence, and I saw buzzers. I saw signs, but I saw no ramps. Maybe there's a reason for that. I don't know. Your Honor, with all due respect — Go ahead. That's fine. That's fine. I don't want to spend all my time — Please proceed. That's fine. Okay, you can get back to us on rebuttal on that. So you wanted to talk about damages, so let's talk about that. He clearly was denied entry at some point, or at least one could find that. Well, $500 is not that much, but the indignity of not being able to do something because of your disability is, I think, certainly worth $500. So the question then is, you're saying they had a burden to prove intent. However, you never raised that with the district court, did you? Your Honor, whether he was entitled to damages was one of the main issues at trial. Right, but did you raise this need to show some — That's what the law requires. As an elementary — That isn't my question. My question is, did you raise — the point that you're making to us here, the arguments you're making, did you make those to the district court? Your Honor, we didn't know what the finding was even going to be on damages until after the fact. The question is, did you make the argument, not did you have to, not did you know you needed to, but did you make the argument? No, Your Honor, because — wait, let me explain why, though. Okay, thank you. The reason being because there was no evidence offered of intentional discrimination. The burden of proof is on the plaintiff. There was no evidence submitted. At that point, Your Honor's asking me, did we tell the judge they didn't put on what they need to — or we're going to offer you evidence of something they haven't even established? No, Your Honor. Was the problem or is the problem that there was no notice of the ADA violation? Notice, I'm sorry? To prove intent, I would assume that the owner of the building had to have notice of the ADA violation. Your Honor, there's two different — we cited for you, Your Honor, the Delano Pyle case. Is that right or not? It's not just notice, Your Honor. It's more than notice. What was their notice? Answer my question first. That it was an ADA violation? Yeah. Until the litigation was filed, I don't think there had been any allegations. Well, but after it was filed, then both of you got experts, and they looked and see what it would take to remedy it. And I think, as I understand it from the briefs, they agreed what that was. Is that right? Yeah, in the weeks leading up to trial when the raps were ordered, Your Honor. That's what I'm asking you. Yes. Yes, Your Honor. And so what was the date that that was done, the agreement? The agreement? Approximately. It was within weeks of the trial setting, Your Honor. All right. And your expert had given reports earlier? Right. The issue, Your Honor, was an additional issue that's not addressed here because the court does address it in its reasons and rulings. The sidewalk that we're talking about isn't owned by the state of Louisiana. It's a city sidewalk. So there was a legitimate issue as to what could or could not be done on someone else's property. The judge does address that in his findings of fact and reasons of the law. So, basically, what was decided on was a portable ramp, something that's not there permanently, and that was the agreement that was ---- Well, it just struck me that after your expert told you what it would take to remedy the violation and then there was more wrangling and there wasn't any promise to do it until Friday before the Monday trial. It seems like that's enough in the record to justify a finding of intent. Not under the standards that are set forth in the case law, Your Honor. All right. Tell me what the standard is. Well, isn't it the case that this circuit hasn't? Or maybe it's not. Has this circuit settled a standard for intent? It has not. There are two different standards that the various circuits have applied for intentional discrimination. And what are those? One is discriminatory intent or intentional violation of the act. And that's the more ---- It doesn't help much. ---- restrictive standard. And then there's also ---- That's like, I know there are disabled people out there that can't get in my building and that's just too bad. And I'm putting quotes around that. I would never say that. Is that the animus? But that's quotes around that. And basically, that's the law in the Ninth Circuit under the Ferguson case. That's straight-up almost malicious intent versus what we have here, which is sort of neglectful intent. Right. And that's the other ---- I'm not going to bother to find out what the law is and whether I comply with it. I'm just going to ---- They call that deliberate indifference under the other standard. I'm just curious, and I don't mean to ---- I know we're not sitting for the bar exam. Why is there an intent requirement for damages under the ADA? Your Honor, that's ---- I don't know the answer. Like you said, I'm not sitting here on the bar exam. Okay. Because I would imagine that would help us figure out what the proper intent quotient is if we knew why. Simply refer the court to the donor. Yeah. No, I believe you that there's ---- Decision, yeah. We've said that. We've said that. And I guess, Judge Davis, another reason to answer you, another basis upon which to answer your question, has to do with what was there even before this lawsuit was even brought. What was there were ramps that the shopkeepers already had at all five of these locations. What was also there were the shopkeepers and their employees able to assist anyone if they were having any difficulties with the ramp. At the end of the day, after all of this and all of these allegations, what the court found to be a reasonable or held to be a reasonable accommodation was simply just a better version of that with some portable ramps and some signs and buzzers so that it could help them additionally. Meaning there were ramps already, but there was a gap. I've seen photographs. There's a gap, right? Right. Your Honor. Whatever you want to call it. There's a gap. That's a problem. But there were ramps. After your expert wrote a report saying what he thought it would take to remedy it, isn't that pretty direct evidence of what you ought to do? Your Honor, chronology-wise, that wasn't even addressed to the defense expert up until those last couple of weeks leading up to trial. It wasn't something that was out during the entire course at the time that the lawsuit was filed. In fact, what was being requested was to break up the flagstone from the 1700s outside of the lower Pontalva building, which is what we're talking about. Even though the city owned it, and to raise a sidewalk, that was being requested. There are 50-something alleged violations in the plaintiff's expert's report with almost $200,000. Well, I think that's why there is an intent requirement, because you can't necessarily, as a public entity, know in existing. . . I'm not talking about when you're building something. That's a whole different thing. But we're talking about stuff that's old, sometimes going back to the 1700s. You can't always know how that intersects with people's disabilities and what is and isn't needed and what is and isn't reasonable. You can't always know that prospectively. So I think that's the concern, that once it's raised, you need to deal with it. And then your point is they made such an extreme request that it, I guess, quelled your desire to find a reasonable. . . Because what I don't understand is why there wasn't an early mediation to try to resolve this a long time ago. Up until the final pretrial conference, they were still asking that the sidewalks be raised. It's in the final pretrial order. Your Honor is going to see it. Let me move you over to the injunction. I'm sorry, Judge. I didn't mean to interrupt you, but I'm running out of time. I just want to mention one other thing. No, no. I want you to talk about it. Okay. I'm sorry. I'm sorry, Judge. There's an attorney's fee claim here. Yes. And the cases say that there has to be some judicial imprimatur on the requirement. Now, my question is this. At the end of the trial, the judge said, I'm going to keep this matter under advisement. I'm going to supervise and make sure this is done. And he had good reason for that because there had been a long time of wrangling about what was going to be done, and they didn't come up with an agreement to do it until Friday before Monday. So why isn't that enough? Your Honor, the case law is clear under B2. Well, no, no. I don't know if there's a case on where a judge has maintained supervision over the agreement to make the repairs. Your Honor, Buchanan says there needs to be a judgment. This court has recognized that. No, the case says there has to be a judicial imprimatur. I can't say that word. And why isn't that enough? Your Honor, this honorable court under Tubbs has also said that the prevailing party does not include a plaintiff who achieves his desired result because he files a lawsuit that brings about a voluntary change in the defendant's conduct. This is what you have here. I mean, the defendant knew here if they didn't follow through with their agreement, they were going to be hauled back into court and have to explain why and go through further proceedings, right? He did maintain jurisdiction, Your Honor, but, again, it has been in effect since October 2017. As I understand the record, and admittedly my imperfect understanding of it is that soon before trial there was an offer, a promise made by your clients to provide the remedy. Not simply a promise, Your Honor, but evidence submitted at trial that it was already on. Well, right, but look. It wasn't just a promise. I'm looking at the district court's attorney fee order at 1853 in the record, note 3. The district court says, on the morning of trial, the defendant was allowed to introduce evidence over plaintiff's objection that mooted injunctive relief. That's what you're referring to, right? Yes, Your Honor. And then he goes on to say, unfortunately the court later learned the defendant did not actually comply with the measures that it used to moot plaintiff's claim for injunctive relief until after plaintiff complained to the court of defendant's noncompliance and the court set a status conference to determine the cause of the delay. So that sounds like a little bit ambivalent about whether the remedy was actually provided at the time of trial or not. Was he wrong about that? Your Honors, again, I keep coming back to the fact that though what happens if your honors find that it wasn't mooted at the time of trial? Do your honors now order that something that's already been done be done? Right, and so that comes back to my question about where's the evidence that it's been done, and we have some photographs, and you say that there's been agreement. So I'll ask the other side if there's an agreement that it's all been remedied, and maybe that makes a difference. What was ordered has been put into place, and there's been subsequent motions where that's not, that has been no indication that they didn't concede that that has been done. Okay, you've saved some time for rebuttal. Did I get your name wrong, Mr. DeRusse? DeRusse, exactly. All right. Good afternoon, and may it please the Court. I'm Garrett DeRusse. I represent Mr. Mitchell Meraklia. I'd like to start today's discussion by getting into the mootness issue. The Supreme Court has explained in the Friends of the Earth v. Laidlaw case that the party asserting mootness bears a heavy burden of persuasion. The Fifth Circuit has explained in the context of claims against a government entity that there must be a formal announcement of a change to official governmental policy. And in this case, there was never any sort of formal announcement of an official change to governmental policy. Instead, what we had was an attorney showing up on the day of trial, and he had a receipt from an online purchase. No testimony under oath from a witness was ever offered. No formal policy documents were ever put into the record. Mr. Meraklia had no order. What would be the effect, though, of us finding that it was moot that morning? I mean, not moot that morning but is moot now because now they have whatever they said or didn't say or testified or didn't testify. Now the ramps and buzzers and signs and all that are there. Sure, and the issue is that this case is not a simple purchase a ramp and you're done because under the Americans with Disabilities Act, this gets into providing an ongoing accommodation. And so the remedy is not actually an installation of a physical ramp. Instead, they are portable ramps that are located inside the storefronts. There's buzzers so that those portable ramps can be hauled out and installed and signage. Does that answer my question about why the photos don't show any ramps? And that's exactly why, because they are located inside. And so saying that this claim is moot is not accurate because there's going to be an ongoing component. It's not the mere cessation of an illegal conduct. It's actually requiring the state museum to be committed to conducting this remedy going into the future. And we've seen that the state museum has, you know, pretty much a hostility towards providing this sort of remedy. We see it in the fact that they didn't comply for 26 years. I don't mean to – I don't want to interrupt, but you do not – what I'm hearing you saying is you do not concede that this case is moot on appeal. That is correct, Your Honor. We do not concede that it's moot on appeal. Ultimately, if this case is remanded for an evidentiary hearing at that point, there would be the opportunity for witnesses to be called and cross-examination. The district court might find that they have a genuine commitment to providing this accommodation into the future, but that has to be done through an evidentiary hearing. So what you're saying is if I put up a buzzer and I have a ramp in a closet, but when the wheelchair person shows up and pushes the buzzer, no one responds or somebody responds, they say they don't know anything about the ramp, they don't know how to bring it out, they don't know what to do, sorry, have a nice day, then that would not be compliance. And so you're saying that just buying the ramps and all of that doesn't answer what you needed the declaratory relief for and the injunctive relief for, because you need to force them to actually pull out the ramps and respond to the buzzer when the disabled person shows up. It gets a little nuanced because the ramps are currently in the possession of the tenant, but there's an ongoing component for the State Museum itself because these ramps and these buzzers and signage, they're located along essentially a shopping center located in the French Quarter. We all know the French Quarter is a very rambunctious place. Signage can get torn down, ramps can become defective, and so there's going to need to be this ongoing commitment. And, yes, if a ramp is just located in a closet and then the signage gets torn down and the State Museum never takes any steps to remedy that or fix that issue, then we're back at square one and Mr. Meragli is having to file another lawsuit. So you're saying the unmoot issue is an injunction to say going forward you've got to maintain control of your tenants to make sure that they are in fact keeping these ramps in working order, have employees that know how to pull them out, people that are responding to buzzers, making sure the signs aren't torn down at Mardi Gras or whatever. That's your argument. Exactly, and there's numerous components involved with this. It's not merely just install a ramp and you're done. It has to be done in the proper manner. Otherwise, the remedy here won't work, and that's the problem. Did you ask the district court for this relief? I don't remember the exact—this was all of the last second. We were asking the district court to order them to install signage and ramps and order them to have a policy with their tenant. This occurred at the last second where this receipt came in unexpectedly over our objection at the trial, and so it really kind of came out of the blue at us and we didn't even have the opportunity. Did you file a motion for reconsideration? We did not file a motion for reconsideration, Your Honor. So ultimately what it comes down to is that the Fifth Circuit has said that there must be a formal announcement of a change to official governmental policy. We've seen no such formal announcement of a change to official governmental policy here, and, in fact, we can see that the State Museum still doesn't believe that there is really an issue. I mean, if you look at even their brief, on four times they say that these are perceived violations, five times they call them in their opening brief alleged barriers. These are not alleged barriers. The district court found that they exist, and the district court also found that the only reason that the State Museum installed this remedy was to moot Mr. Miragli's claim for injunctive relief and the attendant attorney's fees and costs. So what we see here is, you know, essentially there's evidence to show that they may not be committed to this solution in the future, and that's why the injunctive relief component should be overturned and remanded to the district court for further evaluation and evidentiary consideration. What form has this formal change in policy taken in cases where they did find it moot? Because I've just seen where they announce, they just say we're not going to do this anymore, and that seemed to be good enough. So you're making it sound like there has to be something kind of signed in blood and posted in the courthouse square, and I'm just wondering what you're looking for that we would say that's good enough. Sure, and I think it operates along a spectrum, like many things in the law. On one hand, you know, you have removal of an offending policy and saying we're not going to do it again. On the other end of the spectrum, of course, we think is their conduct. And in our briefing, you know, we had some examples of other ADA cases. One was a case involving, it was out of D.C. where they had an arena, and they had, you know, captioning along the stadium for deaf individuals. And the court found that that was not enough because it was a temporary solution and could be easily undone. You mentioned Laid Law. What was the announcement of, you mentioned Laid Law as the mootness case. That's the first case you talked about, right? Yes. What was the, how did the government entity announce the change in policy? I don't recall the exact method through which they announced the change to policy. Like the official, did the official swear out an affidavit or something like that? I don't recall, Your Honor. But that's ultimately what it comes down to is, you know, I think something under oath or, you know, saying that we're actually going to do this more than just an attorney standing up on the day of court and saying, you know, your claim is moot on that basis. I mean, we exist in an adversarial system here in the law, and people should have the opportunity to challenge their opponent to make sure that what they're saying is accurate. I'll tell you, I mean, I don't know that this will bear upon the ultimate outcome of the case. I have a real problem with all of these criticisms of the district court that were not raised with the district court. You didn't have it there. He's saying no intent. You're saying, well, this wasn't enough of a policy change and enough of an announcement, and we were all so confused. You have the time to come and appeal to us, and you don't have the time to go and raise this with the trial court? I can just tell you that doesn't sit well with me. It may not make a difference here because technically you may not have had to raise it, but I will tell you, if you actually care about representing your client and actually care about making changes that would benefit people with disabilities, then go to the district court first, not us first. That's all I would say. I know you're the appellee, but I'm just saying that would be helpful. I do apologize for not filing a motion for reconsideration or to amend the judgment, but Mr. Meragli does very much care and is committed to getting change in accessibility. That's why he's pursuing this lawsuit, and that's why we've been pursuing it on his behalf. Let me ask you, was the barrier, if you put the ramp up permanently, will that form a barrier to traffic and so forth? That was one of the issues ultimately with installation of permanent fixed ramps was that it would impede traffic flow, and that's where ultimately the experts determined that really the only feasible solution here was the portable ramp system along with a combination of the buzzers and signage because a fixed ramp would have impeded the flow of traffic. As I understand it, you essentially agreed with that in the trial court, did you not? We did ultimately agree with that, and that's what the experts ended up having, I think it was joint testimony on, joint stipulated testimony on to the district court. But your mootness argument in a way countermands your attorney's view argument because if you're saying we didn't actually achieve anything in the trial court, we really got a big nothing burger, they got some ramps in the closet and that's it, then how can you get attorney's fees? Well, that gets into the first of all, we think that obviously this should be, the injunctive relief should be remanded to the district. So that's your cross-appellate, and I didn't mean to imply that you didn't have one before when I said you were the appellee. You are the appellee, you're also the cross-appellate. Go ahead. And the second issue is that of damages, and Mr. Meraglia did prevail on the issue of damages. The district court found that the defendant committed discrimination and therefore awarded $500 in damages to Mr. Meraglia for the discrimination that he experienced and the attendant emotional injury. What standard of intent are you asking us to adopt? Sure. What we are asking this court to adopt is what was put forth by the Supreme Court in Alexander v. Coie. And Judge Duncan, earlier you asked opposing counsel why is there an intent requirement under the Americans with Disabilities Act. Ultimately, it gets back into cases many years ago involving guardians, the guardians case. I believe it was 1984. That case was a Title VI case. It involved, you know, what standard, if we're going to hold the government liable for damages, what sort of notice do they have to have? Then in 1985, there was the Supreme Court of Alexander v. Coie. And in Alexander v. Coie, it said that the guardians case, that intentional discrimination is not appropriate for the Rehabilitation Act and that the Rehabilitation Act goes beyond intentional discrimination based on handicapped and in fact prohibits failure to provide meaningful access to individuals with disabilities. And it's Mr. Meraglia's argument that that's the standard that this court should adopt. The standard, and in fact, I believe that the Fifth Circuit has adopted it in the Kelly case, the Alexander v. Coie standard. Which is what? Which is that the Rehabilitation Act goes beyond intentional discrimination based on handicapped and goes to failure to provide meaningful access. Didn't we say what's that case called? The Delano Pyle? Yes, that case. Didn't we say that there's an intentionality requirement? We might not have specified what it meant, but didn't we say there was one? It's a little complicated because in the Delano Pyle case, that is the wording of the Delano Pyle case, but the Delano Pyle case did not cite the Alexander case and it did not cite the case of Kelly v. Boeing Petroleum Services from 1995. So maybe, well, let's say hypothetically it's wrong. I'm not saying that, but let's say hypothetically it's wrong. It's a precedent of this court. You can't change that. That's correct, but the Kelly v. Boeing case, Petroleum's case, predated Delano Pyle and would be precedent as well. But I believe that all three of these cases can be harmonized because what Delano Pyle is saying in that case was that it involved a very specific individualized circumstance where one individual was interacting with another individual, a police officer with a hearing-impaired individual, and he needed an accommodation for his hearing. But ultimately there are different types of claims under the Americans with Disabilities Act and the Rehabilitation Act. There are those sort of individualized needs for accommodation. You know, one person is interacting with a police officer. There's no overall policy at issue. There's no overall practice at issue. There's no physical barrier that's discriminating against everyone with a disability. And so that's where what the court said in Delano Pyle is not necessarily in conflict with Kelly and Alexander because ultimately that dealt with the very specific factual circumstances of one individual interacting with another. So if you were telling a court to instruct a jury on the intent requirement under the ADA to get damages, how would you instruct the jury? It would depend on the nature of the type of case at issue. So you'd have to provide an instruction for the jury, please? Correct. And so if it was an individualized accommodation case... What about in this case? But in this case it would be failure to provide meaningful access to individuals with disabilities just like in the Alexander case. And so... And what intent? You're saying no intent is required then? No, it's not necessarily that it's no intent. It's that if there's an overall practice of discrimination, overall barrier that's discriminating against everyone, it's not that there's no intent. It's that that policy, that barrier itself is discriminatory. And so saying... And so that's how you get the injunction if they didn't go out and buy it. So nobody's debating that. The question is do you get damages? And there you have the problem that I articulated. New Orleans is a good example of a city full of really old buildings, and they were built a long time before there was any kind of ADA. So we're not talking about new buildings, which is a wholly different category. What do you do about these old buildings that have these weird steps and these cobblestones and all of this kind of stuff, and you don't want to take away from the beauty of New Orleans and its roots and all these centuries-old buildings? And that is the area in which if you're going to get damages, the argument is you need to show intent, that they're really intentionally discriminating in some form or fashion. What's wrong with that analysis that I just made? What's wrong with that analysis is that it's under the meaningful access standard that I was just articulating for the Alexander case. It's not that any time you go up to an old building you would be able to recover damages. It would come down to whether they had taken steps to meaningfully provide access. So if they've done something, they've provided maybe not full compliance, but they've done something to provide compliance, maybe a ramp around the back. If they say they had a ramp, it just wasn't a very good one, and they didn't until your client came along realize the problems with the ramp. So what's wrong with that? I mean, again, factually you could say they're lying, that's fine, but I'm saying what's wrong with that argument on its surface? Well, that argument is inaccurate on the facts. The district court found that there were steps at each of these places. The ramps at the four of the five facilities were service ramps. They're used for hauling goods in and out. These are not accessibility ramps that were in place. And so the point is that under the meaningful access standard, it's not that at any place you could sue. It's that if they've done something to provide meaningful access to the general public, then you wouldn't be able just to go up and say, look, I'm going to recover damages against you. But if they've done literally nothing, which when we deposed their chief official, what have you done to increase accessibility at the lower Pontalba building? His answer was one word, nothing. To show discrimination, don't you have to show at least notice from your client that he's being discriminated against? I don't believe that there is any sort of notice requirement. It gets into the question of more of the intentional discrimination versus this case from Alexander Ricohet. And that's where many other circuits have moved towards this sort of deliberate indifference standard. Now, Mr. Miragli is not advocating for the adoption of a deliberate indifference standard. What he's advocating for is to look at what the Supreme Court has said, this meaningful access standard that comes specifically from the Alexander Ricohet case, because that does provide guidance and understanding that when you've done nothing, that's not providing meaningful access. But if you've done, if you've taken steps in the right direction, then that is generally, you know, making meaningful access for this facility, and then you would not be able to sue for damages. So it's not a... If you thought the ramps you had out there, whether you meant them to be for ADA or not, were good enough, and you're just kind of stupid instead of nasty, then why should that yield damages in a world where we have a case that says you need intent? Shouldn't there at least be something more than negligence or stupidity or just ignorance, if you will, of what it takes for a person in a wheelchair to actually navigate a ramp? Well, the Supreme... In passing, the Rehabilitation Act and the Americans with Disabilities Act, and this has been adopted by the Supreme Court in the Alexander case, explain that the purpose of these acts was to prevent more than just intentional discrimination. It's also to prevent discrimination that occurs from neglect. But again, I think the injunctive relief there makes a lot of sense. The question is just recovering damages because, again, you've got a whole city full of opportunities for people to get damages if you set a very low standard for what it is that you have to get because it's a city full of old buildings and so on and so forth. So I understand the injunctive relief completely, but putting that aside, damages relief, why should that be based upon somebody's ignorance of just, oh, I thought the ramps were good enough, and I found out that no, you know, a wheelchair can't navigate that. I found that out because of your client's careful, insightful statements on that. Now that I know I'm fixing that, fine. Why isn't that enough to avoid damages? Because at this point, it's been 28 years since the passage of the Americans with Disabilities Act, and what we get into is that this is a situation where the defendants have done nothing. And that's really what it comes down to is that it's not about if they've done something, that would raise a question. But when you've done nothing. When he said nothing, what was the question? That's from a deposition. That's from a deposition, yes. What was the question that he was responding to? I asked him, oh, what have you done to provide accessibility at the Lower Pontalva building, I believe was the wording of the question, and his answer was nothing. And that's part of the record excerpts that are part of this case. And so ultimately what it comes down to is that, you know, the Fifth Circuit recognized in the Kelly case. He was relying on his tenants to do something. Maybe he can't, but what if he was relying on the tenants to do something? I mean, he may have been, but that would have been, you know, ultimately what I asked him. He might still be liable. Exactly. He might still be liable, but if he's saying, look, my tenants, I was hoping they'd do something. And that's the part of what the ADA was passed to prohibit is sort of, you know, this reliance on, and I see that I don't have time, but I do believe that what the court was inquiring to earlier, that the defendant didn't even actually raise the issue of intentional discrimination and that therefore it really can be addressed without getting into these thorny intentional discrimination issues because it was never raised in the joint pretrial order. Yeah. Y'all both could have done a better job of giving the district court a first stab at all this stuff. I've already said that. Go ahead. The issue of damages was raised in the joint pretrial order, was it not? It was raised as a statement. Yes, it was raised. Yes, it was, but the way it was raised was. The only issue on damages is intent, right? Well, there's also a causation issue. Okay. Whether it was, and that's what the statement on damages was, we believe to be referring to, was whether it caused Mr. Miraglia damages. And the district court found, and it is a vague statement on damages. Okay, thank you. Thank you. And now, Mr. Girod, we have your rebuttal. I'll be brief, Judge. Three things I'd like to address in response to what I just said. First thing, and Judge Davis, this is what I was trying to address before. Under the law, there's a whole gamut of law on historic preservation interests for facilities, public facilities, like the lower Pontabon building that have been there since the 1700s. As Your Honor said, centuries before there were ADA considerations. And what historic preservation has to do with is what reasonable efforts can be made with historic preservation interests in mind. Which may be nothing in some, hopefully, limited circumstances. It may be that you either tear down the building or you don't do anything because of the situation. And I hope that's rare because I really want people in wheelchairs to be able to go everywhere. OARS was being requested to tear up the flagstone that's been there since before the United States. So you're saying that's why you need intent, it's because the intersection between historic preservation and need for ADA accommodation, which you don't have in like a new building or a building that's just a few years old. We're not dealing with a brand new building, a brand new government building. We're dealing with the thing that everybody sees on every national television shot of New Orleans, which is Jackson Square, which is why people come to New Orleans. It's living history. And yes, it's reasonability, but that needs to be balanced. I mean, I understand that in analyzing this historic preservation versus ADA compliance debate that somebody may reach a resolution that is not satisfactory to Mr. Miraglia, but is nothing good enough or does he at least have to have done this debate and tried to do something to help? Your Honor, there wasn't nothing done. Well, it's his deposition answer. But then there's the physical evidence of the ramps that were there, in which Mr. Miraglia said, first of all, the ramps photographs aren't my exhibits. Those are plaintiff's exhibits. Those are plaintiff's exhibits at trial. Mr. Miraglia testified at trial those ramps were all there the one day he ever went out there. Basically, he says the reason I didn't ask for anybody inside to come help me is I don't like to ask for help. Well, you have the ramps that are already there. You have the people inside available to help. At the end of the day, after all of this, what was agreed to be the unreasonable accommodation was a little bit better ramps, portable ramps, and the signs, which, by the way, are not outside where they can get torn down at Mardi Gras. They're all inside of the windows of the shops. The signs and the buzzers were basically just a little bit more of an efficient way to get the same help that was there all along. Even under deliberate indifference, it goes to what actions were taken before, and these actions were all in place, and by plaintiff's own admission, there when he went there, the only time he ever went there. So thank you, Your Honors. I thank you. Interesting case. We appreciate the arguments, and we are adjourned.